# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DANIEL K. AGYEPONG,<br><br>        Petitioner, pro se,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:10CV621<br>1:07CR178-2 |

Petitioner Daniel K. Agyepong, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 56).[1] Petitioner was indicted on three counts of credit card fraud in violation of 18 U.S.C. § 1029(a)(1) and (c)(1) and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). He pled guilty to one count of credit card fraud and one count of aggravated identity theft (docket nos. 15, 16). Petitioner was initially sentenced to 15-months imprisonment on the fraud count and a consecutive 24-months imprisonment on the identity theft conviction (docket no. 26). Following a partially successful appeal, however, he was resentenced to 12-months imprisonment on the fraud count and a consecutive 24-months imprisonment on the identity theft count (docket no. 43). A second appeal was unsuccessful (docket nos. 53, 54, 57). He then filed his motion under Section 2255. Respondent has filed a response (docket

---

[1] This and all further cites to the record are to the criminal case.

no. 62), Petitioner has filed a reply (docket no. 70), and Petitioner's motion is now before the court for a decision.

## PETITIONER'S CLAIM

Petitioner raises only a single claim for relief in his motion. He claims ineffective assistance of counsel because his attorney did not advise him that he would be deported from the United States based on his convictions. He states that he would have gone to trial if he had known this.

## DISCUSSION

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985). The court must determine

whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Here, Petitioner's only allegation is that his attorney did not, as required by *Padilla, supra*, advise him prior to his guilty plea that he would be deported as a result of his convictions. Petitioner reports that he was a permanent legal resident and that the government is now in the process of stripping him of that status and deporting him. He claims that he would have gone to trial if he had been aware he would be deported.

The government's response is two-fold. First, it contends that Petitioner's attorney did advise him that he would likely be deported due to his convictions. In support of this, it points to the Presentence Report (PSR), which states that Petitioner consulted an immigration attorney (PSR ¶ 50) and to an affidavit supplied by Petitioner's attorney in which he states that he did advise Petitioner that he would likely be deported. He discussed this matter with Petitioner and his family (docket no. 62, attach. 1). Respondent also notes that Petitioner's immigration status was discussed at his initial sentencing and that he was well aware that he would likely be deported (docket no. 34 at 45-48).

The difficulty for the government on its first point is that neither the PSR nor Petitioner's former attorney's affidavit specifies whether any consultation on immigration matters occurred before or after Petitioner entered his guilty plea. The transcript from Petitioner's plea hearing also does not show that the matter was discussed at the hearing (docket no. 33). Although it was certainly discussed at Petitioner's first sentencing hearing, it again is not clear when Petitioner first learned of his immigration difficulties. At best it can perhaps be inferred from his sentencing hearing that he was aware of the problem at the time of his plea because he did not complain or seek to withdraw his plea at that time despite having heard the discussion of his likely deportation. In the end, given Petitioner's current assertions that he did not learn of his likely deportation until after his plea was entered, it would appear that an evidentiary hearing would be necessary for the court to resolve this point. For now, however, the court will simply assume for the sake of argument that Petitioner was not aware of the immigration consequences of his plea at the time it was entered and will proceed to evaluate the prejudice prong of his ineffective assistance of counsel claim.

In the government's second argument, it contends that, even if the court were to conclude that Petitioner's attorney did not properly advise him regarding his immigration status prior to the entry of his guilty plea, Petitioner still cannot win because he cannot show prejudice. As noted above, to evaluate prejudice in these circumstances, the court must determine whether a rational defendant in Petitioner's

position would have rejected the plea bargain and proceeded to trial if he been aware of the likelihood of deportation. The inquiry does not turn on what decision Petitioner himself would have made, but is instead an objective evaluation based on the likely outcome of a trial. *Myers, supra*.

The factual basis entered at the time of Petitioner's guilty plea stated that on September 9, 2004, he entered B. J.'s Warehouse Club in Concord, North Carolina and purchased $2,171.41 in merchandise using a credit card number stolen from a victim identified as "E.S." and a re-encoded credit card. He and a co-defendant, Ahdi G. Alshare, were approached by Concord Police as they left the store. When they were unable to produce a legitimate credit card for the transaction, they were arrested. Petitioner had eight re-encoded credit cards on his person, including the one that had just been used to make the purchase at B.J.'s. Petitioner also had two false identifications bearing his picture, but another person's name. After his arrest, Petitioner admitted that he used a device given to him by Alshare to "skim" credit card account numbers while he worked as a bartender. He then gave the numbers to Alshare. Alshare re-encoded credit cards using the stolen numbers. (docket no. 15.)

At Petitioner's initial sentencing, an issue arose concerning the amount of loss for which he should be held responsible. Both parties presented evidence on this point. United States Secret Service Agent James Shively, Jr. testified first on behalf of the government. He became involved in the case after a stolen credit card was

used to make a purchase of $3,209.98 at the Bose Outlet in Concord, North Carolina. The persons who used the card were described as a bald, obese man weighing 300 to 325 pounds and standing about six foot three inches and a black male standing about five foot seven inches to five foot nine inches, weighing 150 to 160 pounds and having an African accent. The larger man fit the description of Petitioner's co-defendant, and the card used in the transaction bore the name of Ahdi Alshare, but it had a stolen number encrypted on it (docket no. 34 at 5-6). Petitioner is described in his PSR as being five feet, six inches tall and weighing 160 pounds (PSR ¶ 51).

That same credit card was later used to make two large purchases at two different Costco stores. The purchases were made using a membership account registered to Insutashi Pawivan. When Petitioner was arrested in Concord, he possessed a driver's license in the name of Insutashi Pawivan which bore Petitioner's picture (docket no. 34 at 7-8). Agent Shively also confirmed that Petitioner was arrested on that occasion carrying the eight re-encypted credit cards containing stolen numbers and another driver's license with his picture and John Mensahaw's name (*id.* at 9). One of the re-encrypted cards was in Mensahaw's name (*id.* at 21).

After Petitioner's arrest, he was interviewed by Agent Shively. He confirmed that he met Alshare in a store in Charlotte, North Carolina. Alshare approached him about making some extra money. Alshare learned that Petitioner worked as a

bartender or waiter and gave him a skimmer to steal credit card numbers (*id.* at 14). A search of Petitioner's vehicle revealed a skimming device and fraudulently purchased merchandise located exactly where Petitioner said they would be. (*id.* at 16). The agent also learned that Petitioner had apparently applied for a Costco membership in the name of Mark Abu. The Costco application in Abu's name showed the same driver's license number as Petitioner's license in the name of Pawivan (*id.* at 17). Later, on May 10, 2007, Petitioner was arrested in connection with the federal charges. He had another skimmer in his pants pocket at that time (*id.*).

Petitioner also testified at his first sentencing. He stated that he skimmed numbers as the agent testified so that Alshare could resell them (*id.* at 23-24). Later Alshare asked him to do him a "favor" by getting fake memberships at various stores like B.J's and Costco so that Alshare could evade membership quantity limits in buying items for his store. Alshare provided names and Petitioner used them to procure fake identifications in the names of Mensahaw, Pawivan, and Abu (*id.* at 27). Petitioner acknowledged that he later accompanied Alshare while Alshare made purchases with what turned out to be fraudulent credit cards; this included the purchase at B.J.'s. Nevertheless, he claimed that did not know that Alshare was using re-encrypted cards or that there were even devices that would re-encrypt cards (*id.* at 27-28, 32). He also stated that, on the same day of his arrest in Concord, Alshare gave him an envelope containing the credit cards and told him he

could use them to make purchases for his family. Alshare told him to use it at places where he was not asked for identification and that if he was asked, he should contact Alshare to come and make the purchase. Petitioner stated that he did not look in the envelope, but thought that it contained cards with Alshare's name on them and that they were his cards (*id.* at 28-30). As for the skimmer taken from his pocket during his 2007 arrest, he claimed that Alshare had also given a skimmer to his cousin. Petitioner had taken it back from him and intended to give it to Alshare. He had it in his car, but he was switching cars at the time and put it in his pocket intending to give it to Alshare after work that day; however, he was arrested by the Secret Service before he could do so (*id.* at 37-38).

Not surprisingly, the judge at sentencing did not find Petitioner's story to be credible. Not only did he find against Petitioner regarding the amount of loss attributable to him, he also found that Petitioner was not entitled to credit for acceptance of responsibility (*id.* at 43-44). Petitioner had previously admitted to a probation officer that he had made the purchase at B.J.'s in 2004 (*id.* at 41).

Petitioner could not have expected that matters would have turned out differently with a jury following a trial. His denials of full knowledge of Alshare's scheme are patently incredible. It is not believable that he possessed the envelope without knowing its contents, that he thought it contained Alshare's cards, that he had only been given the envelope on the very same day he was arrested, or that he just happened to possess false identifications in his pocket that matched a fraudulent

card that had just been used to make the purchase at B.J.'s and another fraudulent card in the envelope. His tarradiddle also ignores the fact that the cashier had identified Petitioner, who looked absolutely nothing like his co-defendant, as the person making the purchase. It is further not credible that, two and a half years later, Petitioner just happened to have a skimmer in his pocket at the time of his second arrest even though he had supposedly left Alshare's scheme long before. His explanations for those events are nearly laughable. It is clear that, while Alshare may have been the leader and organizer who initiated Petitioner into the scheme, Petitioner was fully aware of the entire extent of the credit card fraud and was participating in the purchases. A rational defendant in Petitioner's position and one seeking to avoid deportation would certainly have desired a trial and acquittal. Nevertheless, given the evidence against him and the complete lack of a remotely credible innocent explanation, there was no way to bring that desire to fruition. Whether he pled guilty or went to trial, the reality was that Petitioner would be convicted and probably deported. Petitioner had no real choice but to plead guilty in an attempt to reduce his prison time and then deal with his immigration issues as best he could. No rational defendant would have done otherwise. Even if Petitioner's attorney did not advise him that he faced deportation upon conviction, Petitioner suffered no prejudice. His claim should be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (docket no. 56) be **DENIED** and that Judgment be entered dismissing this action.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
February 11, 2011